**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judith Carter, | ) No.  CV 10-1002-PHX-MHM |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| HSBC Mortgage Corporation (USA), | ) |
| Defendant. | ) |

Currently before the Court are Defendant HSBC Mortgage Corporation's Motion to Dismiss, (Doc. 8), and Motion to Strike Plaintiff's Response to Defendant's Reply in Support of Motion to Dismiss, (Doc. 15); and Plaintiff Judith Carter's Request (Motion) for a Hearing. (Doc. 10).  Having considered the Parties' briefs and determined that oral argument is unnecessary, the Court issues the following Order.

**I.    BACKGROUND**

**A.    Procedural History**

On April 5, 2010, Plaintiff filed suit in Maricopa County Superior Court, asserting causes of action against Defendant for false and deceptive business practices, false advertising, breach of contract, bad faith breach of contract (implied covenant of good faith and fair dealing), and fraud. (Doc. 1-3, p. 10).  Plaintiff also requested declaratory and

injunctive relief, and an accounting. (Id. at 6).[1] Defendant removed the case to federal district court on May 5, 2010. (Doc. 1). On May 28, 2010, Defendant filed the instant Motion to Dismiss. Plaintiff responded on June 9, 2010, and also filed her Request (Motion) for a Hearing. (Doc. 10). The Motion to Dismiss became fully briefed on June 24, 2010. (Doc. 13). Plaintiff responded to Defendant's reply on July 1, 2010, and on July 22, Defendant filed a Motion to Strike re Plaintiff's Response to Defendant's Reply in Support of the Motion to Dismiss. (Doc. 15). Plaintiff did not respond to Defendant's Motion to Strike.

### B.     Factual Background

On February 2008, the Plaintiff was deeded the property located at 81 South 223rd Avenue, Buckeye, AZ 85326 (the "Property"), which she has used as her primary residence. To finance the purchase of the Property, the Plaintiff obtained a loan from HSBC in the amount of $135,000. This loan was secured by a deed of trust, duly recorded in the county recorder's office. (See Doc. 8, Exh. A).[2]

In or around December 2008, Plaintiff became unable to pay her mortgage. (Doc. 1, p. 10, ¶4). At that time, Plaintiff contacted Defendant and informed Defendant that without a loan modification, Plaintiff would be unable to pay her mortgage. (Id.). Over the next ten months, Plaintiff sought to arrange a loan modification with Defendant. Plaintiff alleges that

---

[1] The State Court record contains two simultaneously filed documents labeled "Complaint," one requesting relief and the other stating Plaintiff's causes of action. Understanding that Plaintiff is unrepresented in this matter, the Court will construe these two documents as constituting one "Complaint" for purposes of this Order.

[2] The Court may consider the Deed of Trust, and correspondence between Plaintiff and Defendant, without converting this motion into one for summary judgment because the documents are central to the allegations in Plaintiff's Complaint. See, e.g., Townsend v. Columbia Operations, 667 F.2d 844, 848-49 (9th Cir. 1982); Cumis Ins. Soc., Inc. v. Merrick Bank Corp., 2008 WL 4277877, at *9-10 (D. Ariz. 2008) (contract that is central to a parties complaint is not a matter outside the pleadings and is properly considered in deciding a 12(b)(6) motion). In addition, the Court may consider the Deed of Trust because it is publicly recorded. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

1  Defendant requested documents, which Plaintiff provided, then Defendant would request the
2  same documents again. (Id. ¶6). Plaintiff alleges that she was "getting the run around" from
3  Defendant with respect to her request for a loan modification (Id.). On October 8, 2009,
4  Plaintiff filed a complaint with the office of United States Senator John McCain, which
5  McCain's office forwarded to the Office of the Comptroller of the Currency. (Id. ¶7).

6  In response to an inquiry made by the Office of the Comptroller of the Currency, on
7  November 9, 2009, Defendant sent Plaintiff a letter ("November 9 letter"). (Doc. 1-3, Exh.
8  B, p. 43). In this letter, Defendant declined Plaintiff's request to forgive the entire amount
9  of her loan, but offered Plaintiff the opportunity to participate in the Home Affordable
10 Modification Trial Period Plan ("HAMP Trial Period Plan").[3] (Id.). With respect to the
11 modification plan, the November 9 letter set forth a payment schedule under which the
12 Plaintiff would be required to make reduced payments of $825.24 for three (3) consecutive
13 months (i.e., December 1, 2009, January 1, 2010, and February 1, 2010), and informed
14 Plaintiff that after completion of these payments, she would be "eligible" to receive a
15 permanent loan modification. (Id.). The letter also stated that Defendant would be "mailing
16 documentation providing more detailed information regarding this program . . . under
17 separate cover within 7-10 business days." (Id.). On November 16, 2009, Plaintiff sent a
18 follow-up letter to Defendant regarding the November 9 letter. (Doc. 1-3, Exh. B, p. 44).

---

[3]On May 20, 2009, President Obama signed into law the "Helping Families Save Their Homes Act of 2009," Pub. L. No. 111-22, 123 Stat. 1632 (the "Helping Families Act"). The Helping Families Act ushered in an array of new measures designed to reduce foreclosures, preserve home ownership, and fight the contraction of the real estate market. See id. § 201. Congressional findings stated that it would be necessary to grant servicers authorization to enter into loan modifications consistent with guidelines from the Secretary of the Treasury ("the Secretary") under EESA. Id. On March 4, 2009, the Secretary of the Treasury issued Home Affordable Modification Program ("HAMP") Guidelines requiring lenders to consider borrowers for loan modifications and suspend foreclosure activities while a given borrower was being evaluated for a modification. U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009).

1  In the letter, Plaintiff made reference to Defendant's refusal to forgive the entire amount of
2  her loan and asked Defendant how much it would be willing to forgive. (Id.). Plaintiff also
3  reiterated her request that the entire amount of the loan be forgiven, pointing out that due to
4  economic conditions, the "home is not worth $135,000.00 which what the original loan
5  amount was for." (Id.)

6  On December 15, 2010, Plaintiff received a letter from Defendant informing Plaintiff
7  that Defendant had attempted to contact Plaintiff regarding the HAMP Trial Period Plan, but
8  that Plaintiff had not responded. (Id., Exh. D). In a letter dated January 19, 2010, Plaintiff
9  responded to the December 15, 2009 letter, informing Defendant that she had not received
10 the additional documentation promised in the November 9 letter, and complained that
11 Defendant had not responded to Plaintiff's November 16th letter. (Id. Exh. E). Plaintiff
12 once again notified the offices of Senator McCain and The Comptroller of the Currency
13 about her issues with Defendant. On February 17, 2010, Plaintiff received a letter from
14 Defendant, which stated that Defendant had approved Plaintiff for the HAMP Trial Period
15 Plan on November 9, Defendant had sent Plaintiff the additional information regarding the
16 trial program on November 12, and that Defendant had to revoke the HAMP Trial Period
17 Plan offer because Defendant had not received any payments from Plaintiff, explaining that
18 the guidelines of HAMP only allowed Defendant to offer HAMP once during the life of a
19 loan. Plaintiff received Notice of Trustee's Sale, which was scheduled for May 28, 2010.
20 (Doc. 1, p. 11, ¶20).

21 **II.    LEGAL STANDARD**

22 The Court must liberally construe pleadings submitted by a pro se claimant, affording
23 the claimant the benefit of any doubt. Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623
24 (9th Cir. 1988). However, the Court "may not supply essential elements of the claim that
25 were not initially pled." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982). To
26 survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the plaintiff must
27 simply allege facts sufficient "to raise a right to relief above the speculative level." Bell Atl.
28 Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "A claim has facial

- 4 -

1  plausibility when the plaintiff pleads factual content that allows the court to draw the
2  reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.
3  Iqbal,   U.S.  , 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "The plausibility standard
4  is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a
5  defendant has acted unlawfully." Id. In evaluating a motion to dismiss, "all well-pleaded
6  allegations of material fact are taken as true and construed in a light most favorable to the
7  nonmoving party." Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661
8  (9th Cir. 1998). However, "the court [is not] required to accept as true allegations that are
9  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Spreewell
10 v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Likewise, "a formulaic
11 recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965.
12 Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the
13 absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica
14 Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

15 **III.   DEFENDANT'S MOTION TO DISMISS**

16 Plaintiff's first cause of action is for breach of contract. Plaintiff alleges that
17 Defendant committed breach when it failed to timely send Plaintiff the additional information
18 concerning the details of the HAMP Trial Period Plan. As detailed in the factual background
19 section of this Order, in the November 9 letter, Defendant offered Plaintiff the opportunity
20 to participate in a HAMP Trial Period Plan. As part of that offer it stated: "We will be
21 mailing documentation providing more detailed information regarding this program to you
22 under separate cover within 7-10 days." Plaintiff's breach of contract claim appears to be
23 based entirely on Defendant's alleged failure to timely send the promised information.
24 (Complaint, ¶23-27). In essence, Plaintiff argues that Defendant's failure to send the
25 "documentation" prevented her from participating in the HAMP Trial Period Plan, which
26 constitutes a breach of contract.

27 "The elements under Arizona law to recover for breach of contract are (I) a valid
28 contract; (ii) a material breach; (iii) proximate cause; and (iv) foreseeable damage." Kaliroy

- 5 -

1  Produce Co. v. Pac. Tomato Growers, Inc., 2010 U.S. Dist. LEXIS 102487, *42 n.12 (D.
2  Ariz. Aug. 4, 2010).   Plaintiff's claim fails as a matter of law because she has not alleged
3  the presence of a valid contract.  Instead, Plaintiff has only alleged that Defendant failed to
4  supplement the details of its November 9, 2009 loan modification offer.   In other words,
5  Plaintiff has not alleged the existence of a contract that obligated Defendant to provide
6  Defendant with the "more detailed information."  Without such a contract, Defendant's
7  actions cannot be construed as a breach.  To the extent, however, Plaintiff alleges or would
8  argue that the November 9 letter constituted a contract, her claim also fails.  The November
9  9 letter is nothing more than an offer.  While Plaintiff clearly believes that she was unable
10 to accept without the additional information, it does not change the fact that she does not
11 appear to have taken any steps evidencing acceptance or even a desire to accept Defendant's
12 offer.     For example, Plaintiff does not allege that she communicated acceptance to
13 Defendant or accepted through performance by making the payments outlined in the
14 November 9 letter.  The Court, therefore, has no choice but to dismiss Plaintiff's breach of
15 contract claim.

16      Plaintiff also alleges breach of the implied covenant of good faith and fair dealing.
17 This claim appears to stem from the same set of operative facts that underpins her contract
18 claim.   "The [implied covenant of good faith and fair dealing] arises by virtue of a
19 contractual relationship. The essence of that duty is that neither party will act to impair the
20 right of the other to receive the benefits which flow from their agreement or contractual
21 relationship."  Rawlings v. Apodaca, 151 Ariz. 149, 153 (1986).   The covenant, however,
22 "does not extend beyond the express terms of the contract at issue." Best v. Henderson, 2008
23 WL 2154795, *5 (Ariz. Ct. App. May 20, 2008).   Because Plaintiff has not alleged the
24 presence of a contract, Defendant cannot have breached the implied covenant of good faith
25 and fair dealing.  Plaintiff's claim is dismissed.

26      Plaintiff's third cause of action is for fraud.  Under Arizona law, a showing of fraud
27 requires "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge
28 of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the

- 6 -

1   recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7)
2   the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate
3   injury." Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966). Rule 9(b) of the Federal
4   Rules of Civil Procedure mandates that "[i]n alleging fraud or mistake, a party must state
5   with particularity the circumstances constituting fraud or mistake." This means that the
6   pleadings must be "be specific enough to give defendants notice of the particular misconduct
7   ... so that they can defend against the charge and not just deny that they have done anything
8   wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee
9   v. California, 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotations omitted)).
10  Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where,
11  and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102
12  (9th Cir.2003). "[W]hile a federal court will examine state law to determine whether the
13  elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b)
14  requirement that the circumstances of the fraud must be stated with particularity is a federally
15  imposed rule." Vess, 317 F.3d at 1103 (internal quotations omitted).

16          The basis of Plaintiff's fraud allegation is not apparent from her Complaint. Plaintiff
17  appears to allege that Defendant committed fraud by stating it would send the "more detailed
18  information" concerning the HAMP Trial Period Plan, but failed to do so knowing that if
19  Plaintiff did not receive the information, Plaintiff would not be able to participate in HAMP
20  Trial Period Plan and would, as a result, lose her home. The fact that Plaintiff's Complaint
21  requires this Court to divine the nature of her fraud claim compels this Court to grant
22  Defendant's motion to dismiss. Quite simply, Plaintiff's Complaint is not sufficiently
23  specific to "provide [D]efendant[] with adequate notice to allow [it] to defend the charge."
24  In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 (9th Cir.1996) (setting forth three purposes
25  that Rule 9(b) serves).

26          Plaintiff's final two causes of action are for False Advertising and False and
27  Deceptive Business Acts and Practices. Plaintiff, however, fails to identify any statutory
28  or common law cause of action associated with these theories and relies on the same

- 7 -

allegations which underpin all of her other claims. These allegations are too vague and implausible to survive dismissal; they fail to specify what federal or state statute Defendant is supposed to have violated, how any acts of Defendant violated them, or how Plaintiff was damaged as a result. The Court, therefore, must dismiss Plaintiffs causes of action for False Advertising and False and Deceptive Business Acts and Practices.

Plaintiffs' also assert claims for "Declaratory Relief," "Injunctive Relief," and asks for an accounting. Under Arizona law, injunctions and declaratory judgments, generally are not separate causes of action. Instead, they are merely remedies that must be premised on some other legal theory. See City of Tucson v. Clear Channel Outdoor, Inc., 218 Ariz. 172, 187, 181 P.3d 219, 234 (Ct. App. 2008) ("An injunction is an equitable remedy . . . .") (internal quotations omitted); McMann v. City of Tucson, 202 Ariz. 468, 474, 47 P.3d 672, 679 (Ct. App. 2002) (noting that a declaratory judgment "remedy" is available "'to declare rights, status, and other legal relations'") (quoting Ariz. Rev. Stat. § 12-1831); Land Dept. v. O'Toole, 154 Ariz. 43, 47, 739 P.2d 1360, 1364 (Ct. App. 1987) ("The declaratory judgment procedure is not designed to furnish an additional remedy where an adequate one exists."). Because this Court has dismissed Plaintiff's other causes of action, these remedies are no longer available to Plaintiff. Likewise, given that Plaintiff has failed to state a claim for relief, the Court finds that she has not demonstrated the need for an accounting. Wisner v. Wisner, 129 Ariz. 333, 341 (Ct. App. 1981) ("The burden of showing that an accounting is necessary is on the party requesting the accounting.")

**IV.   DEFENDANT'S MOTION TO STRIKE**

Defendant moves to strike Plaintiff's Reply to Defendant's Reply. (Doc. 14). Although Defendant's motion appears to be meritorious, the Court will deny it, as consideration of Plaintiff's surreply has not altered the Court's conclusions in this matter. See Backus v. Gissel, 2010 U.S. Dist. LEXIS 110133 (D. Ariz. Oct. 14, 2010) ("While [Defendant] "technically correct, the Court will nonetheless permit the filing and deny the motion to strike because consideration of the arguments in the surreply do not alter the Court's conclusions.").

- 8 -

## V.     AMENDMENT

Although the Court has determined that dismissal of Plaintiff's Complaint is warranted, it will dismiss her Complaint without prejudice.  Should Plaintiff choose to file an Amended Complaint,  the Court reminds Plaintiff that  Rule 8(a) of the Federal Rules of Civil Procedure requires that:

> A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.  Relief in the alternative or of several different types may be demanded.

FED.R.CIV.P. 8.  As the Court has already explained, Plaintiff's Complaint fails to state a claim for relief.  Additionally the complaint is somewhat difficult to follow, as it pleads all five of its causes of action as a single count, failing to specify  which facts underlie which claims.  Any amended complaint should focus on facts from which this Court can determine the harm Defendants caused to Plaintiff and why Plaintiff is entitled to seek relief for these alleged harms in this Court.  The Court will only give Plaintiff this one opportunity to amend the complaint before it dismisses her lawsuit in its entirety.  To avoid dismissal, at a minimum, Plaintiff must:

> make clear h[er] allegations in short, plain statements with each claim for relief identified in separate sections.  In the amended complaint, [Plaintiff] must write out the rights [s]he believes were violated, the name of the person who violated the right, exactly what that individual did or failed to do, how the action or inaction of that person is connected to the violation of [Plaintiff's] rights, and what specific injury [Plaintiff] suffered because of the other person's conduct.  See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).  **Each claim of an alleged violation must be set forth in a separate count.**  Any amended complaint filed by [Plaintiff] must conform to the requirements of Rules 8(a) and (e)(1) of the Federal Rules of Civil Procedure.

Kennedy v. Andrews, 2005 WL 3358205, *3 (D. Ariz. 2005) (emphasis added).

**Accordingly,**

**IT IS HEREBY ORDERED** granting Defendant's Motion to Dismiss without prejudice. (Doc. 8). Should Plaintiff wish to file an amended complaint, she must file it not later than 15 days after the date of this Order.

1    **IT IS FURTHER ORDERED** denying as moot Plaintiff Judith Carter's Request
2 (Motion) for a Hearing. (Doc. 10).
3    **IT IS FURTHER ORDERED** denying Defendant's Motion to Strike Plaintiff's
4 Response to Defendant's Reply in Support of Motion to Dismiss. (Doc. 15).
5    DATED this 16th day of November, 2010.

_____
Mary H. Murguia
United States District Judge

14    .