Judith Carter
81 S. 223rd Avenue
Buckeye, Arizona 85326
(623) 466-9773



✓ FILED ___ LODGED
___ RECEIVED ___ COPY

MAR 28 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judith Carter<br>  Plaintiff, | } No #: CV-10-1002-PHX-RRB<br>}<br>} PLAINTIFF JUDITH CARTER'S<br>} ~~AMENDED COMPLAINT~~<br>} ~~CONTINUES REGARDING~~<br>} ~~DEFENDANT'S MOTION TO~~<br>} ~~STRIKE [DOC #17]~~<br>} Response to Motion to<br>} Dismiss |
| v.s<br>HSBC Mortgage Corporation (USA),<br>  Defendant, | |

1. Come now Plaintiff Judith Carter, the court already has jurisdiction and the claim needs no new grounds.

2. Plaintiff Judith Carter is pleading for relief because Defendant's representative Theresa A. Nicchia failed to send additional documentation to me before trial period payment in order for me to fulfill the Defendant's request. This was an act of negligence. See In Rodrigues v. State, 52 Haw. 156 (Haw. 1970).

3. On May 20, 2009, President Obama signed into law the "Helping Families Save Their Homes Act 2009." Pub. L. No.111-22 Stat. 1632 (the "Helping Families Act"). The Helping Families Act ushered in an array of new measures designed to reduce foreclosures, preserve home ownership, and fight the contraction of the real estate market. See id. §201. Congressional findings stated that it would be necessary to grant services authorization to enter into a loan modification consistent with guidelines from the Secretary of the Treasury ("the Secretary") under EESA. Id. On March 4, 2009, the Secretary of the Treasury issued Home Affordable Modification Program ("HAMP") Guidelines requiring lenders to consider borrowers for loan modification and suspend foreclosure activities while a given borrower was being evaluated for a modification. U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines (Mar.4, 2009).

4. Your Honor according to President Obama the "Helping Families Save Their Homes Act 2009" law my rights were violated by the Defendant's representative Theresa A. Nicchia because Defendant's representative Theresa A. Nicchia Vice-President Customer Resolution Department had told me that the loan modification was approved and that she would be mailing documentation providing more detailed information regarding this program under a separate cover within 7 to 10 business days. Which, I never received within the time frame given. According to the letter dated November 9, 2009 from the Defendant, HSBC Mortgage Corporation had agreed to the loan modification. Moreover, letter dated February 17, 2010 states that the loan modification was approved and that the Defendant will be mailing documentation providing more detailed information regarding this program under a separate cover within 7 to 10 business days in order for me to fulfill the Defendant's request.

5. I waited for this documentation to be sent to me and I never received anything at all from the Defendant in the allotted time agreed. I never got the additional documentation to reply to the defendant's request until February 17, 2010 which was well after the deadline.

6. The defendant owed a duty to me and has violated that duty. My rights were violated because I was told in writing letter dated November 9th in paragraph (3) states "In recognition of your current financial hardship HSBC Mortgage Corporation has agreed to the Home Affordable Modification trial period plan" and that Defendant will be mailing documentation providing more detailed information regarding this program under a separate cover within 7 to 10 business days. The defendant's violation of her duty resulted in harm because I lost my home. The documentations were not sent to me because of negligence and I was set up to fail. Defendant should have made sure that the documentation was sent certified mail because the Defendant knew that if the Defendant did not receive the pretrial payments and signed documentation that the HAMP would have been revoked and the real property would have gone on public auction. The Defendant failed to submit the necessary documentation to me in a timely matter in order for me to send out the pretrial payments to the Defendant.

7. Defendant should take full responsibility for failing to take the necessary steps for me to receive the documentation that was promised to me before the trial payments. Defendant breached that duty of due care by neglecting to communicate with its representatives on behalf of my HAMP to make sure I received the necessary documentation within the time frame given.

8. I lost my home because of negligence. Defendant's representative Theresa A. Nicchia Vice-President of Customer Resolution Department knew the HAMP guidelines and again ignored and failed to advise me about sending the trial period payment anyway even if I didn't receive the additional documents which was promised to me to be received in order fulfill the Defendant's request. Defendant is responsible for my real property being foreclosed and sold on public auction. Defendant is legally responsible to the damages that have occurred regarding the real property. My rights were violated

intentionally so I would not have the chance to send trial period payments in order for the loan modification to be finalized.

9. In addition HSBC Mortgage Corporation USA should have notified me as soon as they didn't receive the first trial payment to encourage me to make the 1st payment. According to section 8 Trial Period Plans on the HAMP Guideline. Section 8.3 Trial Period Payments reads:

> The servicer's receipt of the first payment due under the Trial Period Plan (TPP) Notice on or before the last day of the month in which the first payment is due (TPP Offer Deadline) is evidence of the borrower's acceptance of the TPP Notice and its terms and conditions. If the first trial period payment is not received on or near the first payment due date, servicers which in this case is HSBC Mortgage Corporation should contact the borrower and encourage submission of the first payment prior to the TPP Offer Deadline. Servicers may not impose any stricter standard for payments due under HAMP than are applied in the servicer's other loss mitigation programs.

10. According to Chapter IV Home Affordable Foreclosure Alternatives Program (HAFA).

### 1 Introduction
The Home Affordable Foreclosure Alternatives (HAFA) Program provides financial incentives to servicers and borrowers who utilize a short sale or DIL as an alternative to foreclosure on an eligible loan under HAMP. HAMP servicers must follow the guidance set forth in this Chapter to determine the extent to which short sales or DILs will be offered.

### 2 Eligibility
A loan is eligible for HAFA if the servicer verifies that all of the following criteria are met.

### 3 HAFA Considerations
Servicers may not solicit a borrower for HAFA until the borrower has been evaluated for HAMP in accordance with the requirements of Chapter II. Borrowers that meet the eligibility criteria for HAMP but who are not offered a TPP, do not successfully complete a TPP, or default on a permanent HAMP modification should first be considered for other loan modification or retention programs offered by the servicer prior to being evaluated for HAFA.

Each participating servicer must develop a written policy, consistent with investor guidelines, that describes the basis on which the servicer will offer HAFA to borrowers (HAFA Policy). A servicer's HAFA Policy must identify the circumstances under which the servicer will require monthly mortgage payments and how that payment will be determined, in accordance with applicable laws, rules and regulations; describe the basis on which the minimum acceptable net proceeds will be determined; and may incorporate such factors as:

- The severity of the loss involved;
- Local market conditions,
- The timing of pending foreclosure actions;
- Borrower motivation and cooperation;
- Customary transactional costs of short sales and DILs; and
- The amounts that may be required to release any subordinate liens on the property.

The date and outcome of the HAFA consideration must be documented in the servicer's file. Servicers must consider possible HAMP-eligible borrowers for HAFA within 30 calendar days of the date the borrower:

- Does not qualify for a TPP;
- Does not successfully complete a TPP;

11.  Again I never received any information regarding the HAFA program from the Defendant HSBC Mortgage Corporation. HSBC Mortgage Corporation failed to provide the HAFA Program to me. Instead, they placed my home on public auction and sold it.

12.  For the foregoing reasons, Plaintiff, Judith Carter request that this Court does not dismiss the First Amended Complaint in its entirety with prejudice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Judith Carter prays for relief against Defendants as follows:

1.  For disgorgement of all gains, profits, and advantages derived by Defendants from its acts of unfair competition and other violations of law.

A. For real property damages in the amount of $135,000
B. For all costs and Payments Paid to HSBC Mortgage Corporation (USA) in the amount of $22,000
C. For Late Fees in the amount of $ 8,456.35
D. Court, Server, Mailing and Miscellaneous Fees in the amount to $402.97
E. Unnecessary rent paid due to real property transfer of ownership in the amount of $2856.00
F. For such other and further relief as the Court may deem proper.

RESPECTFULLY SUBMITTED this   28th day   of  March , 20 11

_____
Judith Carter
81 S. 223rd Avenue
Buckeye, Arizona 85326
(623) 466-9773


I hereby certify that on the 28th day of March, 2011 I served the attached document by mail to the following address:

Gregory J. Marshall
Snell & Wilmer LLP. Law Offices
One Arizona Center, 400 East Van Buren
Phoenix, AZ 85004-2202
*Defendant Pro Se*